IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TIMOTHY MCCULLOUGH, SR., | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 18-CV-1427-SMY ) |
| JEFFERY DENNISON, WEXFORD HEALTH SOURCES, ETHAN WILKE, KAREN SMOOT, and SHERRY BENTON, | ) ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Timothy McCullough, Sr. is an inmate currently incarcerated at the Shawnee Correctional Center. He filed the instant lawsuit pursuant to 42 U.S.C. § 1983, claiming Defendants were deliberately indifferent to his serious health needs (Doc. 1). Specifically, McCullough alleges that Defendant Karen Smoot was deliberately indifferent to the side effects of his psychotropic medications and his need for eye care (Count I), and that Defendant Sherry Benton was deliberately indifferent to his grievance and need for medical care (Count III). He also seeks injunctive relief from Defendant Jeffery Dennison.[1]

Now pending before the Court is Defendants' Motion for Summary Judgment (Doc. 118), which McCullough opposes (Doc. 119). For the following reasons, the motion is **GRANTED**.

## Background

The following relevant facts are undisputed unless noted otherwise: When McCullough

---

[1] Dennison is the former warden of Shawnee Correctional Center and was named solely in his capacity to effectuate any injunctive relief (Doc. 8). However, Dennison is no longer the warden at Shawnee Correctional Center. Accordingly, pursuant to Federal Rule of Civil Procedure 25(d), the current warden of Shawnee (Darren Galloway ("Galloway")) is automatically substituted for former warden Dennison. Fed. R. Civ. Pro. 25(d).

transferred to Shawnee on July 24, 2017, he requested evaluation by an optometrist and new eyeglasses (Doc. 118-1. p. 32). On January 30, 2018, he filed a grievance regarding his request, noting that he had not seen an optometrist, that he was losing eyesight, and that he was suffering adverse health effects from not being able to see well (Doc. 118-4, pp. 5-6). A grievance officer reviewed the grievance and responded in part:

> Per K. Smoot – HCUA – Inmate medical chart it is noted that Inmate McCullough received glasses in 2015 with the recommendation to "follow up as needed". There is no documentation to substantiate the inmate's claim that he has "to have this procedure each year, at least twice" or verify his claim that he has a "degenerative eye condition". At this time SSC does not have an Optometrist, and the traveling Optometrist is in the facility 1-2 times per month to see inmates who have medical necessity. It is noted the inmate McCullough is on the waiting list to be seen by an Optometrist. Reading Glasses are available for purchase in the inmate commissary. (Doc. 118-4, p. 3).

Karen Smoot was the Healthcare Unit Administrator ("HCUA") at Shawnee from 2016 through 2020. (Doc. 118-2). The HCUA is an administrative position and is not a medical treatment provider. *Id.* Smoot did not provide medical care to individuals in custody at Shawnee and never provided medical treatment to McCullough (Doc. 118-1, p. 55; Doc. 118-2). She did not schedule medical appointments for individuals in custody at Shawnee (Doc. 118-2) and did not have any control or input in the staffing of medical doctors, optometrists, or any other Wexford employees. *Id.* McCullough never spoke to Smoot about his eye care (Doc. 118-1, p. 55).

Sherry Benton was employed by IDOC and was assigned to the Administrative Review Board ("ARB") during all times relevant to McCullough's Complaint (Doc. 118-3). She did not provide medical care to individuals in custody or schedule medical appointments for individuals in custody. *Id.* Benton received McCullough's grievance on April 17, 2018 (Doc. 118-4, p. 1). Because the grievance was determined to not comply with the timeframes outlined in the IDOC grievance process, it was not reviewed or considered further. *Id.*

McCullough was seen by Dr. Maqbool Ahmad, an ophthalmologist, on June 29, 2018, at Marion Eye Center in Marion, Illinois (Doc. 118-5, pp. 4-5), having been referred by IDOC for suspected glaucoma (Doc. 118-5, pp. 6-7). Dr. Ahmad diagnosed narrow angles, which is a painless congenital condition that had most likely existed for all of McCullough's life (Doc.118-5, pp. 9, 12). On that date, McCullough's eyesight was 20/20 (Doc. 118-5, pp. 8-9), and he was given a laser treatment for his narrow angles (Doc. 118-5).

Dr. Ahmad testified that the narrow angles McCullough experienced were unrelated to his complaints of blurred vision, pain, and the like and that the complaints were unsubstantiated based upon his medical knowledge, education, and examination of McCullough (Doc. 118-5, p. 15).

## Discussion

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Once a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing there is a genuine issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Prison officials impose cruel and unusual punishment in violation of the Eighth Amendment when they are deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016). To prevail on such a claim, an inmate must show that he suffered from an objectively serious medical condition, and that the defendant was deliberately indifferent to a risk of serious harm from that condition. *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016).

An objectively serious condition includes an ailment that has been "diagnosed by a physician as mandating treatment," one that significantly affects an individual's daily activities, or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir.

1997). It is undisputed that McCullough suffered from an objectively serious medical condition during the relevant period. Thus, the question is whether the defendants knew of but disregarded the risks associated with his condition. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

First, McCullough asserts that Smoot was deliberately indifferent to his medical complications and side effects from psychotropic medications. No evidence has been presented to support this aspect of his claim. Rather, the evidence reflects that McCullough stopped taking psychotropic medications in the Spring of 2012 – nearly 5 years before his arrival at Shawnee (Doc. 118-1, p. 21). And there is no documentation or other evidence of him complaining to Smoot of side effects or complications related to his remote use of the medications. Therefore, Smoot is entitled to summary judgment on this point.

Likewise, no reasonable jury could conclude that Smoot was deliberately indifferent to McCullough's eyecare needs; there is simply no evidence that she ignored his complaints or disregarded any risk. She had no interaction with him prior to reviewing his January 2018 grievance. In response to the grievance, she noted that McCullough was on the list to see an optometrist and that glasses were otherwise available at the commissary. While McCullough argues that Smoot was responsible as an administrator for scheduling inmates and ensuring that they are treated, Smoot cannot be held vicariously liable for the treatment or lack of treatment of others, and there is no evidence that she was personally involved in any treatment or scheduling decisions. *See Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017); *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018).

Finally, to the extent McCullough alleges that Smoot delayed treatment, there is no evidence tying a delay in treatment to Smoot's conduct. Nor is there evidence that any delay resulted in adverse consequences for McCullough. *Petties v. Carter*, 836 F.3d 722, 730-1 (7th Cir.

2016) ("To show that a delay in providing treatment is actionable under the Eighth Amendment, a plaintiff must also provide independent evidence that the delay exacerbated the injury or unnecessarily prolonged pain."); *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013) (an inmate must provide "verifying medical evidence" that he suffered substantial harm as a result of the delay (rather than substantial harm merely from the inmate's underlying condition).[2]

Similarly, the evidence on record cannot support a finding that Benton was deliberately indifferent to McCullough's medical needs. There is no evidence that she was personally involved in any treatment or scheduling decisions or that she had direct personal involvement in the conduct alleged to be a constitutional violation. *See Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017); *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018); *Boyce v. Moore*, 314 F.3d 884, 888 (7th Cir. 2002). Her only involvement with McCullough was the receipt of his grievance at the ARB level. While McCullough argues that Benton had a duty to enforce or protect his need for medical attention upon receipt of his grievance, Benton cannot be expected to ignore the procedural requirements set forth in the Illinois Administrative Code for Department of Corrections Grievances. *See* 20 Ill. Admin. Code 504 *et seq*. McCullough did not satisfy those requirements, and his grievance was properly not considered.

Finally, McCullough's allegation against Galloway (formerly Dennison) and request for injunctive relief is unsupported by the evidence presented, as is detailed above; absent a constitutional violation, no injunctive relief can be granted. McCullough received medical

---

[2] McCullough cites to *Williams v. Liefer* for the proposition that the jury could find that the delay in medical care resulted in Plaintiff suffering unnecessarily prolonged and exacerbated pain. 491 F.3d 710, 716 (7th Cir. 2007). However, McCullough testified that he continues to have ongoing pain and headaches – even after receiving the medical treatment from Dr. Ahmad (Doc. 118-1, pp. 51-52). As such, he has failed to present any verifying medical evidence that would allow a jury to define the amount of unnecessary and prolonged pain that McCullough suffered as a result of the delay.

attention from Dr. Maqbool Ahmad, an ophthalmologist and has presented no evidence of disregard or delay in any additional medical treatment.

### Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 118) is **GRANTED**. As no claims remain, the Clerk of Court is **DIRECTED** to enter judgment accordingly and to close this case. All pending motions are **TERMINATED.** The April 12, 2023 final pretrial conference and April 24, 2023 jury trial dates are **VACATED**.

**IT IS SO ORDERED.**

DATED: April 11, 2023

*[signature]*

**STACI M. YANDLE**
**United States District Judge**